CP:DAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK  **MISC. 11-392**
- - - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF THE APPLICATION OF THE
UNITED STATES OF AMERICA FOR A WARRANT
AUTHORIZING THE MONITORING,
MAINTAINING, REPAIRING, AND REMOVAL OF A
GLOBAL POSITIONING SYSTEM MOBILE
TRACKING DEVICE IN (i) A MOTOR VEHICLE
DESCRIBED AS A 2007 ISUZU REFRIGERATED
BOX TRUCK, WHITE IN COLOR, BEARING NY
COMMERCIAL LICENSE PLATE NUMBER
20134JZ, WITH VEHICLE IDENTIFICATION
NUMBER JALC4B16577005176; and
(ii) A MOTOR VEHICLE DESCRIBED AS A
2007 MITSUBISHI REFRIGERATED BOX TRUCK,
WHITE IN COLOR, BEARING NEW YORK
COMMERCIAL LICENSE PLATE NUMBER
NY59209MA, WITH VEHICLE IDENTIFICATION
NUMBER JL6CCG1S77K001844

FILED UNDER SEAL

AFFIDAVIT IN
SUPPORT OF APPLICATION

- - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

    Jason Couse, being duly sworn, deposes and says as follows:

    1.  I am a Special Agent with the National Oceanic and

Atmospheric Administration's Office of Law Enforcement ("NOAA"),

duly appointed according to law and acting as such. I have been a

Special Agent with the NOAA for approximately six and a half years,

and in that capacity have participated in numerous investigations

regarding violations of the federal laws governing the preservation

and protection of fish and wildlife.  In particular, I have

participated in investigations involving the unlawful capture,

transport and sale of protected species.

2.    I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41(b); Title 18, United States Code, Section 3117; and Title 28, United States Code, Section 1651, authorizing the installation and monitoring of Global Positioning System ("GPS") mobile tracking devices installed by trained technicians of the NOAA, or authorized representatives thereof, in or on (i) A MOTOR VEHICLE DESCRIBED AS A 2007 ISUZU REFRIGERATED BOX TRUCK, WHITE IN COLOR, BEARING NEW YORK COMMERCIAL LICENSE PLATE NUMBER 20134JZ, WITH VEHICLE IDENTIFICATION NUMBER JALC4B16577005176 ("SUBJECT VEHICLE #1"); and (ii) A MOTOR VEHICLE DESCRIBED AS A 2007 MITSUBISHI REFRIGERATED BOX TRUCK, WHITE IN COLOR, BEARING NEW YORK COMMERCIAL LICENSE PLATE NUMBER NY59209MA, WITH VEHICLE IDENTIFICATION NUMBER JL6CCG1S77K001844 ("SUBJECT VEHICLE #2") (collectively the "SUBJECT VEHICLES"), currently located in Eastern District of New York, in order to monitor the movement of the SUBJECT VEHICLES, for a period of forty-five (45) days.

3.    I am familiar with the facts and circumstances of the investigation set forth below through discussions with other agents and officers of the NOAA and other state and federal law enforcement agents, and from my review of records and reports relating to the investigation.   Unless otherwise noted, wherever in this affidavit

2

I assert that a statement was made, the information was provided by another NOAA agent, or law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Likewise, information resulting from surveillance sets forth either my personal observations or information provided directly or indirectly through other law enforcement officers who conducted such surveillance.

4. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the installation of GPS mobile tracking devices in or on the SUBJECT VEHICLES, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that the requested orders should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

5. Probable cause exists to believe that information obtained from the requested tracking devices will lead to evidence of the receipt, transport and sale in interstate commerce of illegally harvested horseshoe crabs, in violation of Title 16, United

3

States Code, Section 3372 and Title 18, United States Code, Section 371 (the "TARGET OFFENSES"), as well as the identification of individuals who are engaged in the commission of these offenses.

6.    In addition, such information is relevant and material to an ongoing investigation.

7.    For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by, among others, OI MING CHEN, principal of ACE Group Trading Company, Ltd., EDWARD THOMAS, JEFFREY KORN, MICHAEL COOMBS, MICHAEL FALCO and JOHN REMSEN.  Further, there is probable cause to believe that these individuals and others known and unknown, intend to use the SUBJECT VEHICLES to commit the TARGET OFFENSES.

### PROBABLE CAUSE

I.   Background

8.    Title 16, United State Code, Section 3372(a)(2)(A) makes it unlawful to "import, export, transport, sell, acquire, or purchase in interstate or foreign commerce [a]ny fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law."  A knowing violation of the statute is a felony offense, punishable by up to five years' imprisonment.

4

9.  Horseshoe crabs are a protected wildlife species under New York State law.  Among other things, New York State laws and regulations set strict limits on the amount of horseshoe crab that can be harvested daily by commercial fishermen, and require that fishermen file reports for each fishing trip, indicating the amount of horseshoe crab harvested.  See N.Y. COMP. CODES R. & REGS., tit. vi, § 44.8 (2011).

10.  Horseshoe crabs are also protected under New Jersey State law.  Indeed, horseshoe-crab fishing is illegal in New Jersey. For that reason, a significant portion of horseshoe crabs harvested in New York is shipped across state lines to supply the market for horseshoe crab in New Jersey, where it is used by fishermen for bait, among other things.  New Jersey law requires that, absent special license, all persons possessing horseshoe crab in New Jersey maintain records indicating that the crab has been harvested outside of the state.  See N.J. STAT. ANN. 23:2B-21 (2011)

11.  The horseshoe crab fishing season in New York generally lasts from mid April through the end of July, with the preponderance of hand-harvest fishing occurring during the months of May and June.

5

II.   The 2010 Fishing Season Investigation

12.   On May 30, 2010, a refrigeration truck rolled over on the Garden State Parkway in Cape May County, New Jersey.   After learning that the truck contained horseshoe crab and lobster, I spoke with local law enforcement and conducted an investigation.   At the site of the accident, I found copies of state and federal reports relating to the harvest and sale of horseshoe crabs by fishermen in New York.   I also learned that a fisherman in Cape May, New Jersey had contacted local law-enforcement and advised that he had previously purchased the horseshoe crab being transported in the truck and had been expecting delivery that day.

13.   Through my investigation, I learned that the truck was registered to ACE Group Trading Co., Ltd. ("ACE"), 133-38 32nd Avenue, Flushing, New York 11354.   The driver of the truck when it rolled over was OI MING CHEN, who, according to New York State records, is the principal of ACE.

14.   Agents subsequently spoke with CHEN, who had been hospitalized in Queens, New York, following the accident.   CHEN consented to a search of the truck, which had been impounded.   In the truck, I found additional reports relating to the harvest and sale of horseshoe crabs, hand-written notes related to horseshoe crab and other seafood, and a book of ACE receipts.

6

15.   Among the documents I recovered from the accident site and the ACE truck were copies of reports detailing the harvest of horseshoe crabs in Freeport, New York, by fishermen JEFFREY KORN, MICHAEL COMBS, EDWARD THOMAS, MICHAEL FALCO and JOHN REMSEN, and the sale of those crabs to ACE.   The documents indicated that the named fishermen had harvested a substantial number of horseshoe crabs during late May 2010 and filed the requisite reports in New York relating to those crabs.

16.   The New York Department of Environmental Conservation ("NYDEC") is responsible for receiving and maintaining the referenced fishing reports.   After speaking with officials at NYDEC, I learned that KORN, COMBS, THOMAS, FALCO and REMSEN had not in fact submitted the reports carried in the ACE truck.

17.   For example, NYDEC records indicated that COMBS had filed a report claiming that he had not fished on May 23, 2010.   But the documents recovered from the ACE truck falsely stated that COMBS had filed a report with NYDEC indicating that he had landed 200 horseshoe crabs that same day.

18.   Similarly, NYDEC records did not reflect any fishing activity for JEFFREY KORN on May 26, 2010.   But the forms recovered from the ACE truck falsely stated that KORN had filed a report indicating that he had landed 236 horseshoe crabs that same day.   A

7

catch in excess of 200 crabs would have violated the New York state harvest daily limit.

19.  NYDEC records further reflect that FALCO, KORN and COMBS had submitted to NYDEC "Not Fishing" letters indicating that they did not intend to fish at all for the entire 2010 season.

20.  Based on my training and experience as a NOAA Special Agent, I believe that the referenced fishermen supplied ACE with fraudulent documents that ACE could provide to purchasers of the horseshoe crabs as proof that the crabs had been legally harvested and reported.  In fact, the horseshoe crabs had not been properly reported and thus been obtained in violation of New York State law.

III.  The 2011 Fishing Season Investigation

A.  Additional Fraudulent Reports Found In An ACE Truck

21.  On May 12, 2011, police in Suffolk County, New York stopped a refrigerated box truck for motor vehicle violations. After determining that the truck contained live horseshoe crab, the officer conducting the stop contacted NYDEC.  NYDEC officers responded and identified the driver and owner of the truck as OI MING CHEN, principal of ACE.

22.  The officers found that the truck contained 82 horseshoe crabs.  CHEN told the officers that he had purchased the crabs from a fisherman named "Eddie" at "Cary Place" in Freeport,

8

New York.  CHEN also stated that he purchased horseshoe crabs from a fisherman named "Jeff."  He explained that he picked the crabs up at approximately 2:00 pm in Freeport, New York.

23.  CHEN provided to the NYDEC officers copies of reports purportedly filed by EDWARD THOMAS.  Those reports indicated that THOMAS had harvested 170 horseshoe crabs on May 1, 2011, 80 horseshoe crabs on May 2, 2011 and 185 horseshoe crabs on May 9, 2011.  CHEN stated that the May 2 report related to the crabs in his truck, and that the May 1 and May 9 reports relating to crabs that his wife had picked up the other day.  CHEN further explained that the horseshoe crabs were destined for "Carman," a conch fisherman located off of the Garden State Parkway in New Jersey, at exit 17.

24.  I have learned from NYDEC that as of June 1, 2011, it had not received the May 9 report purportedly filed by THOMAS.  Under New York State regulations, the report was required to be received by NYDEC on or before May 20, 2011.[1]

B.  May 16, 2011 Surveillance of 134 Cary Place and SUBJECT VEHICLE #1

25.  NOAA agents subsequently conducted surveillance at 134 Cary Place in Freeport, New York ("Cary Place").  At that address

---

[1] The reports reflecting the May 1 and 2 harvests were filed on May 23, 2011.  Those reports were required to be filed by May 6 and May 13, 2011, respectively.

is a lot and covered shed, located on the bank of a canal leading out a body of water known as "Baldwin Bay." During the evening of May 16, 2011, agents observed SUBJECT VEHICLE #1 departing from the area. SUBJECT VEHICLE #1 was marked on its sides and back with the name "ACEGROUP-SEAFOOD.COM" and other ACE markings. Agents followed SUBJECT VEHICLE #1 to Flushing, New York, and then to a nearby location in College Point, New York (the "College Point Facility").

26. At the College Point Facility, agents observed the occupants of SUBJECT VEHICLE #1 unload from it un-packaged, live horseshoe crabs. The occupants then packaged the crab into four large palletized cardboard vats, and loaded the vats back into SUBJECT VEHICLE #1.

27. Agents followed SUBJECT VEHICLE #1 across the New York State line to a location in Lower Cape May Township, New Jersey, where they observed the delivery of the four vats containing horseshoe crabs to a company known as "H&H Seafood."

28. I have learned from NYDEC that ACE is not licensed to conduct horseshoe-crab-related business from the College Point Facility. Horseshoe crab dealers must obtain permits with respect to all facilities where they operate. Among other things, doing so ensures that NYDEC can properly inspect and monitor such facilities.

10

C. May 17-18, 2011 Surveillance of Cary Place and SUBJECT VEHICLE #1

29. On May 17, 2011, agents observed a boat registered to Debra Korn, wife of JEFFREY KORN, of Freeport, New York, return to the dock at Cary Place. Shortly after the vessel returned to the dock, agents observed the operator and only occupant begin to off-load horseshoe crabs from the boat. A vehicle registered to Debra Korn was parked at that location as well.

30. During the morning of May 18, 2011, agents observed vehicles registered to EDWARD THOMAS and Debra Korn at Cary Place. Later that morning, agents observed a boat matching the description of Korn's vessel approach the dock at Cary Place. Soon thereafter, another vessel approached the dock at Cary Place.

31. Minutes later, at approximately 10:30 a.m., agents at Cary Place observed an individual matching a photograph of JEFFREY KORN, loading horseshoe crabs into a large blue fiberglass pool-style tank. The tank appeared to contain numerous live horseshoe crabs. A blue tarp, weighed down by a cooler and other items, was placed over the tank.

32. Later that day, agents conducting surveillance at the

11

College Point Facility observed SUBJECT VEHICLE #1 depart that location and travel to Carey Place. Agents observed SUBJECT VEHICLE #1 back into the Carey Place location and remain there for 15 to 20 minutes. SUBJECT VEHICLE #1 then returned to College Point.

33. After SUBJECT VEHICLE #1 departed, agents observed that the tarp had been removed from the tank at Carey Place containing horseshoe crabs earlier that day, and that the tank now appeared to be empty.

34. As of June 1, 2011 NYDEC records reflected that JEFFREY KORN and EDWARD THOMAS had not filed reports indicating that they had harvested horseshoe crabs for the period for May 16 through 22, 2011. Such reports were required to be filed by May 27, 2011.[2]

D. Surveillance of SUBJECT VEHICLE #2

35. During the course of this investigation, I have learned through surveillance by myself and other agents that ACE uses SUBJECT VEHICLE #2, along with SUBJECT VEHICLE #1, as its primary delivery vehicles.

36. On May 18, 2011, the same day as the events recounted in paragraphs 30 to 34, above, agents observed two vats of horseshoe

---

[2] NYDEC records further reflected that MICHAEL FALCO and JOHN REMSEN had had not filed reports indicating that they had harvested horseshoe crabs for May 16 to 22, 2011. The records reflected that MICHAEL COOMBS had harvested 200 horseshoe crabs per day, from May 12 through May 18, 2011, which had been sold to ACE.

crab being loaded into SUBJECT VEHICLE #2 at the College Point
Facility.  SUBJECT VEHICLE #2 is marked "ACE Group Seafood" on its
doors.

37.  After leaving the College Point Facility, SUBJECT
VEHICLE #2 was observed traveling to H&H Seafood in Lower Cape May
Township, New Jersey, the same location to which SUBJECT VEHICLE #1
had delivered horseshoe crabs on May 16, 2011.  Individuals were
observed off-loading from SUBJECT VEHICLE #2 the two vats of
horseshoe crab upon arrival.

### GPS DATA

38.  I have confirmed with NOAA technicians, that the
GPS mobile tracking devices may be installed within or on the SUBJECT
VEHICLES, and the devices, once installed and rendered operable, will
generate a signal that fixes the geographic position of the SUBJECT
VEHICLES.  The signals are then read by a satellite that transmits
the location information in a form that a NOAA computer program is
able to calculate and project upon a map.

### GROUNDS FOR DELAYING NOTICE

39.  Pursuant to 18 U.S.C. § 3103a and 18 U.S.C. §
2705(a)(2), the government seeks authorization to delay notification
to OI MING CHEN, ACE, EDWARD THOMAS, JEFFREY KORN, MICHAEL COOMBS,
MICHAEL FALCO and JOHN REMSEN, and to any other person or entity

13

targeted by the investigation, of the warrant relating to the SUBJECT
VEHICLES until thirty (30) days after the date on which the order
proposed herein expires.   The grounds for this request are as
follows: the investigation is in its early stages and is expected
to continue at least through the end of the horseshoe-crab fishing
season at the end of July 2011.   Disclosure of the warrant at this
time would cause premature termination of the investigation into the
above-mentioned individuals, among others, and may cause them to
cease using the SUBJECT VEHICLES and to potentially flee.

### AUTHORIZATION REQUESTED

40.   Based on the foregoing, your affiant believes that
the information requested herein will lead to evidence of the TARGET
OFFENSES, as well as to the identification of individuals who are
engaged in the commission of those and related crimes.   Obtaining
such information is necessary in order to determine the exact
location of the SUBJECT VEHICLES so that law enforcement agents can:
(a) monitor the movements of the SUBJECT VEHICLES when they move
about, and/or depart the Eastern District of New York; (b) track the
SUBJECT VEHICLES' travel without the need for close proximity vehicle
surveillance; and (c) identify locations where the SUBJECT VEHICLES
are taken by ACE and others in the course of commission of the TARGET
OFFENSES.   This will allow law enforcement agents to observe, and

14

potentially arrest, those individuals, and others who will use the SUBJECT VEHICLES to commit the TARGET OFFENSES.

41. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41(b), Title 18, United States Code, Section 3117, and Title 28, United States Code, Section 1651, it is requested that the Court issue a warrant and Order authorizing the installation and use of GPS mobile tracking devices in or on the SUBJECT VEHICLES by trained NOAA technicians or by an individual or individuals working under their direct supervision in order to monitor the movement of the SUBJECT VEHICLES for a period of forty-five (45) days.

42. IT IS FURTHER REQUESTED that the Court authorize technicians and agents with the NOAA or their authorized representatives to monitor the signals from GPS mobile tracking devices installed within the SUBJECT VEHICLES for a period of forty-five (45) days following the issuance of the Court's Order, including signals produced inside private locations, and other places not open to the public or visual surveillance, and signals produced in the event that the SUBJECT VEHICLES leaves the Eastern District of New York, but remain within the United States.

43. IT IS FURTHER REQUESTED that the Court authorize technicians and agents with the NOAA or an individual or individuals operating under their direct supervision to, if necessary,

15

surreptitiously access the SUBJECT VEHICLES in the Eastern District of New York in order to install the GPS mobile tracking devices and to repair, replace or remove the GPS mobile tracking devices including in the event the SUBJECT VEHICLES travels to private locations, other places not open to the public or visual surveillance, and in the event that the SUBJECT VEHICLES leave the Eastern District of New York, but remains within the United States.

      44.   IT IS FURTHER REQUESTED that this affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that working copies should be made available to the United States Attorney's Office, the NOAA, and any other law enforcement agency designated by the United States Attorney's Office, and that the Court require the return of this warrant – and any notification required under 18 U.S.C. § 3103a and 18 U.S.C. § 2705(a)(2) – to occur within 30 days after the use of

the tracking device has ended unless extended by the Court for good

cause shown.

Dated: Brooklyn, New York
        June 1 , 2011

_____
JASON COUSE
Special Agent
Office of Law Enforcement
NOAA


Sworn before me this

__1st__ day of June, 2011

    s/Robert Levy
_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

14

CP:DAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF THE APPLICATION OF THE          O R D E R
UNITED STATES OF AMERICA FOR A WARRANT
AUTHORIZING THE MONITORING,
MAINTAINING,REPAIRING, AND REMOVAL OF A
GLOBAL POSITIONING SYSTEM MOBILE
TRACKING DEVICE IN (i) A MOTOR VEHICLE
DESCRIBED AS A 2007 ISUZU REFRIGERATED
BOX TRUCK, WHITE IN COLOR, BEARING NY
COMMERCIAL LICENSE PLATE NUMBER
20134JZ, WITH VEHICLE IDENTIFICATION
NUMBER JALC4B16577005176; and
(ii) A MOTOR VEHICLE DESCRIBED AS A
2007 MITSUBISHI REFRIGERATED BOX
TRUCK,WHITE IN COLOR, BEARING NEW YORK
COMMERCIAL LICENSE PLATE NUMBER
NY59209MA, WITH VEHICLE IDENTIFICATION
NUMBER JL6CCG1S77K001844

- - - - - - - - - - - - - - - - - - - - X

         WHEREAS an affidavit has been submitted to the Court by

Special Agent Jason Couse of the National Oceanic and Atmospheric

Administration's Office of Law Enforcement ("NOAA"), and full

consideration having been given to the matters set forth therein,

this Court finds that there is probable cause to believe that the

monitoring of Global Positioning System ("GPS") mobile tracking

devices placed in or on (i) A MOTOR VEHICLE DESCRIBED AS A 2007 ISUZU

REFRIGERATED BOX TRUCK, WHITE IN COLOR, BEARING NEW YORK COMMERCIAL

LICENSE PLATE NUMBER 20134JZ, WITH VEHICLE IDENTIFICATION NUMBER

                                  1

JALC4B16577005176 ("SUBJECT VEHICLE #1"); and (ii) A MOTOR VEHICLE.
DESCRIBED AS A 2007 MITSUBISHI REFRIGERATED BOX TRUCK, WHITE IN
COLOR, BEARING NEW YORK COMMERCIAL LICENSE PLATE NUMBER NY59209MA,
WITH VEHICLE IDENTIFICATION NUMBER JL6CCG1S77K001844 ("SUBJECT
VEHICLE #2") (collectively the "SUBJECT VEHICLES"), will lead to
evidence of violations of Title 16, United States Code, Section 3372
and Title 18, United States Code, Section 371; therefore, it is hereby

ORDERED, pursuant to Fed. R. Crim. P. 41(b) and 18 U.S.C.
§§ 3117, and Title 28, United States Code, Section 1651, that Special
Agent Jason Couse of the NOAA, together with other NOAA Special
Agents, law enforcement officers and their authorized
representatives are authorized, within ten days from the date of this
order, to install in or on the SUBJECT VEHICLES, which are presently
located in the Eastern District of New York, GPS mobile tracking
devices; it is further

ORDERED that said Special Agents and their authorized
representatives are authorized to enter onto private property for
the limited purpose of installing, maintaining, repairing and
removing the mobile tracking devices; it is further

ORDERED that said Special Agents and their authorized
representatives are authorized, for a period of forty-five (45) days
from the date of this order, to monitor the signals from the mobile

2

tracking devices, including those signals produced from inside any private garage or other location not open to public or visual surveillance, pursuant to Title 18, United States Code, Section 3117, in the event the SUBJECT VEHICLES travel outside the Eastern District of New York, interception may take place in any other jurisdiction within the United States; and it is further

FOUND, that the requirements of Fed.R.Crim.P. 41(d) do not apply to the installation and interceptions sought to be authorized by the instant application; and NOAA is therefore not required to serve a copy of this Order on any owners of the SUBJECT VEHICLES, nor to make an inventory of any resulting interceptions to be served on any such owner; and it is further

ORDERED that the Court's Order and the accompanying Affidavit of Special Agent Jason Couse submitted in support thereof, as they reveal an ongoing investigation, be sealed until further Order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that copies of the Court's Order in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the NOAA, federally deputized state and local law enforcement officers, and other government and contract

3

personnel acting under the supervision of such investigative or law enforcement officers as necessary to effectuate the Court's Order.

It is further ORDERED that, pursuant to 18 U.S.C. 3103a and 18 U.S.C. 2705(a)(2), service of notice may be delayed for a period of thirty (30) days after the termination of the monitoring period authorized by the warrant.


Dated: Brooklyn, New York
      June  /  , 2011


s/Robert Levy

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

4